Good morning, Your Honors, and may it please the Court, Paul Clement, for the appellant's I endeavor to save three minutes for rebuttal. Your Honors, the Court below entered one of the most extraordinary remedies in the judicial arsenal and did so with the thinnest of reasoning. Indeed, the District Court itself recognized that its analysis was cursory and it promised that a more complete opinion would follow. That promise remains unfulfilled. A later ruling made crystal clear that no further reasoning on this extraordinary anti-suit injunction against foreign proceedings that have been ongoing for over 500 days would be forthcoming. That alone requires the extraordinary injunction to be vacated. Mr. Clement? Yes, Your Honor. Yes, I do have a question, if you wouldn't mind. I want to ask you about waiver. And at the anti-suit injunction hearing, the District Court said to the Exes Council, this is what he said, so your theory is that Sussman comes in and they're like, oh my God, why didn't anybody assert the forum selection clause? And it was Exes Council, Mr. Hilton responded, new council, new theory. That's kind of the simplest explanation here. Based in part on this particular exchange, the District Court found that as a matter of fact, Media Matters had not waived its right to enforce the forum selection clause. So I'd ask you, I'd like to ask you, why has your position changed? So our position has never changed. I think if you read that transcript carefully, you'll see the following thing happened. First, as you would expect, the District Court was most interested in Media Matters' explanation for why it hadn't invoked the forum selection clause for 18 months. Because obviously, Media Matters knows why they didn't do it. Exes Council can only speculate. So what Mr. Nelson, who's here today, and is an excellent lawyer. Well, counsel, I appreciate you answering that question. That's not the question I asked you about why Media Matters did what it did. I'm asking you about what Exes Council said at the hearing, and if you could answer that question, please. I'm endeavoring to do so, Your Honor, but I need to give you the context. And the context starts with the colloquy that immediately preceded it with Media Matters Council. Because Media Matters Council drew a distinction between the Texas litigation and the reasoning of what happened in the Texas litigation and what happened in the foreign litigation. Because remember, the original complaint is to enjoin essentially all three. And Mr. Nelson distinguishes between the two. And he says, as to the foreign litigation, there was a considered decision to press other issues like forum nonconvenience. And then he says, as to, this is Mr. Nelson, he says, as to the Texas litigation, as to the Texas litigation, I just don't have an explanation. And then when Mr. Hilton goes up, he does not contest Mr. Nelson's view of why Media Matters didn't raise this in the foreign litigation, it would be very hard for him to do so. Because it's really Media Matters who has control over this information. But as to the Texas litigation and only the Texas litigation, he says, well, I have to  That's all I can do. But my speculation is new lawyers, new theory. So he did not make a representation about why Media Matters did not raise this in the Irish litigation. And I think that's all that matters at this point. So there was no waiver there. I would also say, Your Honor, as to that point, it really, the only thing that little colloquy, the only thing that matters is whether what the right rubric for analyzing the 18 months of delay is waiver or forfeiture. Counsel, two questions. One is, is having to do with the delay and I'll ask that second. But first, is this a factual determination that the district court judge concluded here? And therefore, we owe the proper deference as to that, number one. So why don't you answer that? And I'll go to the second part of the question. So I mean, I think this is sort of a mixed question of fact and law. And there's some deference there. But I'm not terribly worried about that, because honestly, you can read that transcript for yourself. And I think his finding is clearly erroneous. It's on the record the day before his order that there was a considered decision not to invoke the forum selection clause, but to pursue other theories. And then, of course, that was followed by, in the Irish litigation, a dispositive motion on forum nonconvenience. Now, as to the difference between... On that point, on the Irish litigation and this issue still remaining on waiver, are we looking at duration or substance? In other words, what was happening in the Irish litigation? Because my understanding is that... And really, I do want to know. I'm a little unclear of the record. But it seems to me that there was an exchange of experts' information. There was no decision on the merits. There was no decision on jurisdiction. There was no decision on any of it, except for the exchange of those things. Is that correct, number one? And number two, what do we make of that if there's no actual litigation in the same way we would think of that in this country? So I think the way you were stating, I think, slightly understates what happened in Ireland. But I also think, to respond to the first part of your question, I think when you're talking about 18 months of delay, that's probably sufficient unto itself. But to try to be as responsive as possible on the state of the Irish litigation, the Irish litigation is 18 months in. There has already been, you know, there's a docket. There are filings. There's already been a preliminary ruling on a preliminary matter. And then, as I understand Irish litigation, and let me just say parenthetically, the Irish courts are going to understand this a lot better than me or the district court below. But as I understand the Irish litigation, you sort of proceed on a forum nonconvenience. You proceed in two steps. First, you do what you could loosely think of as factual development, which requires an exchange of expert affidavits. And then, once that gets to a certain point of maturity, you then move on to some specific legal briefing of that. But I think the dichotomy between sort of factual proceedings and legal proceedings is a bit of a misnomer here. And I would very much invite the Court to look at the exchange of affidavits, because there's expert declarations, and there's three of them. There's the opening expert affidavit by Professor Mr. Levine, and that's 22 single-spaced pages. And by my rough count this morning, Mr. Levine cited over a hundred cases, legal cases, in his expert affidavit. Then Professor Michael Ramsey then responds with a 42-page single-spaced expert declaration responding to that. And then Professor Levine responds with filing again on the formal docket in the Irish litigation with a 19-page single-spaced reply affidavit. So if you look at those expert affidavits, they are probably, I'm going to guess here that Professor Ramsey's declaration is longer as a word count than any of the briefs filed in this Court as part of this appeal. So to say that that has not proceeded beyond its infancy I think just mistakes the factual record here. And I guess it also, and this gets to the comedy factor, it just sort of superimposes our own notions of how litigation should proceed on a foreign court system. And I think it's telling here that the district court judge gave more respect for the proceedings in Texas, perhaps because it's just easier to understand where those proceedings were. And then, of course, Judge O'Connor, when he was allowed to consider the question that precipitated the, I don't know, new counsel, new theory, when he's actually in the domestic litigation where that exchange took place, he has no question finding that this was, there was no excuse for not raising this thing for 18 months. And one of the things I wanted to say earlier, and I'll just get back to it now, this whole dispute about whether it was a considered decision or whether it was just whoops, we just never read the fine print, it only matters for the difference between waiver and, rather, waiver and forfeiture. And you know, I happen to love the sort of angels dancing on the head of a pin differences between waiver and forfeiture, but the only material difference between the two is whether you have to assert prejudice. And this was kind of the whole topic of the Supreme Court's Morgan v. Sundance decision. And here the distinction in the end doesn't matter because the prejudice that matters is the prejudice to my client. My client, you know, Mr. Ramsey, Professor Ramsey is an excellent, excellent legal scholar. It is not cheap to ask him to produce a 42-page expert declaration. And that expert declaration is wholly unnecessary in any litigation if the forum selection clause is invoked either in Ireland or in the Northern District of California in a timely fashion on the assumption it applies. Now, we still think there are some very good arguments as to why a forum selection clause in an arrangement between ExCorp and Hananoki doesn't even apply in the Irish litigation, which is brought by TIUC against Media Matters. So in the Irish litigation, you have essentially two non-signatories to the ex-domestic terms of service. And I, you know, I hazard to speculate why the forum selection clause wasn't raised. It got, you know, my co-counsel in trouble below, I suppose. But one reason is it just might not apply here at all given this is litigation in Ireland between two non-signatories. What's the point of filing all the litigation, you know, in Singapore, Ireland, and Texas? Do you, what's the reason for having three different jurisdictions going? I think it was to avoid any concerns that you wouldn't be able to recover all of the worldwide damages in one particular fora. And that was exacerbated, I think, a little bit in that the Singapore entity, TAP, has a different business model than ExCorp and TIUC. So I think that the decision essentially was that the surest way to ensure that all of the damages could be recovered would be to file suits in the separate fora. Okay. So the Singapore case is presently dismissed. And I know you're seeking further relief from that. But if you, if you don't succeed in Singapore, can you, can your client bring those claims in Texas, for example? I mean, I don't want to, I don't want to essentially give away any argument that we could, but I don't think it's obvious that we could at that point. But we do hope that we'll get relief from our appeal in the Singapore proceedings. But, you know, I guess one last thing I'd say before I sit down, because I'm almost at time, I mean, if this had been timely raised and it would, and they're right about the Forum Selection Clause, which we continue to dispute, then the actual purpose of the Forum Selection Clause, which is to get all of this litigation in one fora and resolved, would have been accomplished. One way to think about the prejudice here is there's no way to put Humpty Dumpty back together again at this point. There is litigation going on in Texas. There is an appeal going on in Singapore. By the district court's own reasoning, all of that should continue to go on, will continue to go on, whether this litigation proceeds in California or Ireland. And I would respect, that's just one more factor that in a fair consideration of all the factors here, comedy and just the comedy owed to the Irish proceedings would be to let them go forward. Okay. See, I'm at my rebuttal time. Thank you, Mr. Clement. Mr. Nelson? Good morning, Your Honors. May it please the Court, Justin Nelson from Sussman Godfrey, representing the respondents. I want to start with the part of the injunction that X barely mentions in its briefing, it didn't talk about it in its original argument right now, the prohibition on bringing other foreign suits on the same subject matter. And I start with this worldwide component of the injunction, not just because X has provided no real argument against that part, but also because it illustrates why this Court should not disturb the Irish component of the injunction either, especially on this triple heightened deferential review here, where X bears the burden to show waiver, where this Court does not disturb factual findings unless they are a clear error, and where the standard to reverse a preliminary injunction is abuse of discretion. I'll tell you just what concerns me is just the amount of time that this was proceeding in Ireland and the degree of litigation there. We can debate, you know, how much was it? Was it a lot? Was it more preliminary by Ireland standards? But it just was, we're talking 16 to 18 months. And so regardless of what the reason was, which frankly, to me, gets into essentially attorney-client privilege reasons, what we're looking at is just somebody not having invoked a claimed right in a contract for 18 months. And that's the issue that's bothering me. Thank you, Your Honor. May I respond just directly on that? That is, it's 15 months, but I take your point. Yeah. And the question that comes up on this, I want to address it in two parts. The first is the standard, and the second is what's going on in Ireland, because I really do think it makes a difference. And the question, and it's somewhat related in the arbitration context, which you can look to, I think, for guidance, and the most recent case from the Ninth Circuit is the Armstrong case, 59F4, 1011, 1015. That's a 2023 case. It's post-Morgan, so it doesn't deal with the prejudice aspect of it. But the question in those cases is whether there is active litigation on the merits to such a prolonged period to try to take advantage of being in that other court. And the same is true here. So for example, we cited the Madden case, and I think it's the A.V. case, where in fact there was litigation on the merits about an anti-suit injunction in the foreign courts, and then later there was an anti-suit injunction. The party in the foreign had raised the foreign non-selection argument, but the foreign court had rejected that on the merits and then proceeded to reach the merits of the case. And then later in the United States, the losing party brought an anti-suit injunction to stim it and to try to stop the enforcement action as well, and the court said that's okay because it is not the delay itself. It is whether you are actively pursuing the merits, which, and now back to what is going on in Ireland, we have never done. We have always contested jurisdiction and venue. Those are what the underlying back and forth are both on the facts and on the experts are with respect to Ireland, and that is what is a four-mention proceeding. I guess the question I would ask is how long could you have gone? I mean, 15, 16 months here, but what if it had been three years, you know, three years of this kind of proceedings in Ireland? Could you then come back to a northern district court and say we now want to invoke this contract right? I think the question would be had we ever given up our right to contest jurisdiction on that? So you could have waited until the day before the statute of limitations ran in California, so four years minus a day? Well, I think at some point, Your Honor, it would tip into whether we were actively litigating on the merits and whether there would be a comity analysis of whether the Irish court had actually done anything with respect to looking at the case. And it clearly would affect it on with respect to that. But delay as delay alone, I don't think under this Court's case law, both in the arbitration waiver context and with respect to the comity analysis, would make a difference if we were just looking at what was going on. In other words, it's not the delay itself. That's the Madden case. In the Madden case, it was in Australia. And the court there ruled against the person trying to invoke the forum selection clause, and it wasn't until 18 months later that they came to the United States court. After, by the way, in a much more of an affront to comity, the underlying case went all the way to the merits. And even at that point, the United States court said, no, no, no, because you've actually preserved your arguments, you've talked about preserving jurisdiction and venue, that it is sufficient to actually talk about that. Can I ask you, does this, the district judge, district court judge, who's such a fine judge, seemed to think this turned on why your client's prior counsel didn't advance this. And the judge said, well, it wasn't a sort of tactical decision, it was more of a misstep. Is that what this turns on? I don't think so, because this is also why it is certainly true it was a misstep and it wasn't a tactical decision. But regardless of the law put a footnote there saying, I don't know how I would know that, other than to, it's impossible. But I think we would need your prior counsel to tell us that, and I have reasons to believe why your client may not want to go there. So that's why I'm asking about this particular finding, if you will, and what it does to this case. Thank you, Your Honor. Well, because, again, under Gallo, we don't even have to go to the Irish court at all. It is for this court to enforce the forum selection clause. So the question then comes back to waiver, which is, have we done something that would actually have been designed to actively litigate on the merits and try to have a second bite at the apple? And that is why the standard of what was going on is really dependent on what was going on in the Irish court. And it was something called a foremention. A foremention is simply, it is a status conference. It is to set a date for a later hearing. And that is undisputed in the record. It is from our Mr. Carusone at ER-289 that talks about that. But it's also in their affidavit, the Byrne affidavit at ER-208. What about all the expert exchanges here? I mean, it does seem like it's more substantial than something that's purely procedural or preliminary. It is only, and you can look at that, Judge Bress, and go into it. It is only on jurisdiction in venue. And, in fact, one of the things that we actually said, Your Honor asked a question, and it was about the worldwide damages component of it. One of the things in the expert reports was, it's okay to litigate this in the United States, in fact, because you can get worldwide damages in the United States. So this idea that they were seeking solely because they wanted damages in Ireland and Singapore is belied by the fact that we stipulated in the Irish proceeding in those back-and-forth affidavits that, in fact, it was perfectly appropriate to have worldwide damages in the United States litigation, which goes directly to Would that bind the U.S. courts, your stipulation in Ireland? Well, we certainly, look, under United States defamation law, you can get worldwide damages. That's where we came from. That's what the expert was about. But I would certainly think that we would be stopped from arguing otherwise, that they couldn't get worldwide damages here, which just goes If I could ask you, is there a concept of waiver by conduct inconsistent with the assertion of your rights? That is, sleeping on them for 18 months here, or would your position be that maybe there would be that kind of waiver, but only if you were getting to the merits? Your Honor, there is absolutely the concept. We embrace the concept. But to your second part of what you said, it goes on, and this is where these arbitration waiver cases are exactly on point. It goes on about what have you done to try to litigate the merits of the case. And on that, the answer is we have done nothing. In fact, we have tried to preserve our arguments as to jurisdiction and venue. And indeed, they have no evidence. So as long as you're litigating, in your view, as long as you're litigating forum nonconvenience, jurisdiction, venue, then you can sleep on your forum selection as long as you want up to the 4-year statute of limitations. Well, I wouldn't call it sleeping on, but I think you have the right to raise it. The other case that I would point your Honors to from the Ninth Circuit that goes into this, and it is analogous, which is in the Neuwirth case, which is 931, F3, 935, 942, and Note 10, it was an arbitration case, and they moved to dismiss on jurisdictional grounds. And then later on, there was the question became about the right to arbitrate. And the court held and discussed that in that particular example, there was no waiver because there was a contestation of jurisdiction all along. And that is exactly analogous to the case that we are facing here in Ireland as well. And of course, it doesn't even apply at all. All of this argument doesn't even apply with respect to the worldwide component of the injunction, of course. But with respect to Ireland, all along, we have made arguments with respect and only contested jurisdiction and venue. And in fact, X has not argued that it is too late to raise this particular form selection clause in Ireland. There is no evidence in the record that it would be too late. So it would be really incongruous to hold that we have waived something here by our litigation conduct when there is no evidence in the record that we could — that we couldn't even raise it in Ireland at that particular time. Would that not be a question for the Irish courts if they had to consider that? I don't know what they would say about that. My point only, Judge Bress, is that there is no evidence in the record that X has even stated that it is too late to raise in the Irish court itself. But the point of it is, is that we don't even have to go to the Irish courts. We can go to this court to enforce a form selection clause. That is gallow, right on point, and as discussed and applied. And those are — this is also why it's different with respect to even other anti-suit injunction cases. Applied and gallow really stand apart from other cases, including Microsoft, which is the other Ninth Circuit case on point, because there is a form selection clause here. And I do want to just briefly note as well that there is this footnote in their opening brief about the differing standards about supposedly the Ninth Circuit has a more liberal standard for anti-suit injunctions than other circuits. Before you get to that, I do have a question. And it's actually the very first question that Judge Shabria asked your side, which is, why did it take so long to invoke the form selection clause? And Judge Shabria spent quite a long time, as I can tell from the record, trying to get to that answer. And I'm not so sure he got a satisfactory answer. So with the amount of time that you have left, I want you to succinctly give me an answer to that question. The answer is they just missed it. It's, you know, and that colloquy I think makes clear on that they're pointing to on 709 and 710. If I could press on a slightly connected why did something happen, this may be behind the shield, but once the form selection clause surfaced, why did you not ask the Irish courts? It would seem that if you're right, you win instantly and everything disappears. Did you? Two answers. Two answers. Number one, we don't have to. It's this Court to do it. But number two, there was no even opportunity to do it, okay? And I would really point, Your Honors, to ER-608, which describes, it's their affidavit, which says that it is a foremention, okay, which is to fix a hearing date, this is paragraph 12 of their affidavit, to include any directions for the exchange of submissions. A foremention is to fix a hearing date and the exchange of briefing. You don't have to take our word for it. It's all over the declaration. You can go to the Irish court website, okay, which is, it describes what a foremention is, which is the high court president's notice, guidance for litigation in person in the non-jury and judicial review lists. And here's what it says. Before getting a hearing date, your case will appear along with lots of other cases in a forementioned list. The forementioned list is a case management list. The judge will focus on procedural matters. Okay, so basically you're saying that there's no, there was no procedural step. I mean, I take your first point, that you didn't have to do it, but it puzzles me as to why you didn't and your answer seems to be. There was no opportunity to do that, in fact. There's no rule under Irish law that lets you raise it at this point. I mean, I just, that's the answer. I'll look it up, but okay. I would encourage, Your Honor, to go to that website and the Irish courts itself and not, you can look at ER-289 and ER-608 and ER-632, which is our affidavit on the same point, but the Irish courts very much speak to this. There was no opportunity to raise it in legal briefing. On March 10th, as part of our factual reply affidavit, we, in fact, did raise the forum selection clause, and I would just end by saying that there is, again, no evidence that we have somehow waived or not preserved our right to make this argument in Ireland to the extent that it even matters. Can we go back to Judge Mendoza's question on why this took so long, and your answer is prior counsel missed it, and so then the question I have is of what relevance is that to us here? It's really not, because it goes to Your Honor's first question to me, which was, what does it matter if they missed it, whether it was an intentional decision or was it not? It doesn't, because we have the right to bring it in this court so long as we are not actively litigating it on the merits and trying to get a second bite at the apple, which we have never, ever done in Ireland. We have always maintained our right to contest jurisdiction and venue. So the decision that we're reviewing does seem to turn on this distinction between gamesmanship on the one hand and missing it on the other hand, and if the distinction doesn't matter, can the injunction hold? Absolutely, Your Honor. The underlying factual decision was whether there was waiver, whether there was, and the answer is no, and whether there was something that was going on in Ireland that would otherwise affect the comity analysis. The gamesmanship was really, I think, certainly found that there was no gamesmanship, but that's a way to get to the same question, which is were we trying to get that second bite at the apple, and of course we weren't, because we were contesting jurisdiction the entire time. Let me see if my colleagues have any questions for you before we have you sit down. Okay. Mr. Nelson, thank you. Just a few points in rebuttal. First of all, I firmly believe they could have raised this in Ireland, and there's of course no doubt that they could have raised it in the Northern District of California, sometimes in the 18 months before this, so they clearly could have raised this. In fact, if you read those expert declarations, it's almost surreal to read them. I mean, this is all like this multi-factor forum nonconvenience thing where Professor Levine talks about the District of Columbia as a possible forum and California as a possible forum. If they would have just gone in in either court and said, we don't need these multi-factor tests or any of these expert declarations, there's a forum selection clause, then one court or the other could have said, okay, well, does it apply to these two non-signatories, and we could be done with it. And so I would respectfully suggest that, you know, we can debate here about what state the Irish litigation is in. I think it's probably not too late for them to raise the forum selection clause, at least as part of the forum nonconvenience analysis. Then the Irish court, who's going to know exactly what stage the proceedings are at and how sort of far in the gestation period this is, will be in a position to make that judgment. I mean, I know what view Judge O'Connor had, and I think the Irish courts will have the same view, which is, wait a second, it is way too late to be raising this now. Now, I think ultimately the reason that it doesn't matter whether it was superintentional or supernegligent is because, as I suggested earlier, the only difference is whether you have to show prejudice. And here we can show prejudice in the form of the Ramsey Declaration, which was not costless to produce and would be unnecessary if they'd raised it earlier. But we can also show prejudice in the broader sense that if this had been promptly raised, there would still be a chance to have all of the litigation in one forum. But because they waited so long, even the district court judge below recognized you couldn't stop the Texas litigation at that point, and at this point you can't sort of get back to a single forum. The last thing I'd like to say is the right standard is not the standard of active litigation on the merits. I don't think that's right even in the domestic arbitration context. From my recollection of reading a lot of cases in the conjunction with Morgan against Sundance, in most jurisdictions, if you waited 18 months to raise an arbitration clause in domestic litigation, you would be in deep, deep trouble. But the other problem is it kind of gets to the comedy point, and I'll finish on this. Active litigation on the merits might work as a standard in domestic litigation. But by applying that and ignoring the comedy and superimposing that on the Irish courts, you get a situation like this, where they're 18 months in. They've got, like, almost 100 pages of single-space declarations. I don't think they're thinking they're just starting. Can I ask you, Mr. Nelson referenced the part of the district court's injunction that was not specific to Ireland but about essentially enjoining future worldwide, future other litigation on this elsewhere. Do you have a response to that or a comment on it? Because it didn't seem that your client was challenging that necessarily in the briefing, or are you? Well, I mean, we just didn't focus on it because it's just not, you know, what is important to us is the ongoing Irish litigation. I would say this, though. I think if you're going to get rid of this injunction, you should get rid of the whole thing, because I don't think that piece can stand on its own. And part of the reason I think that can't stand on its own is, like, one question here is what terms of service matter? Is it the terms of the service back when we filed this lawsuit, which picks California as the forum, or is it the current terms of service, which have Texas as the forum? So I assume the other side's theory is that as to our decision to initiate litigation in Ireland 18 months ago, the relevant terms of service are the old terms of service, which would allow them to go to California. But if what they're trying to enjoin is future litigation even today, then I think the relevant terms of service are the current terms of service, which would say the relevant forum is Texas, so the district court in the northern district of California, I don't even think would have jurisdiction to enter that piece of the injunction and that piece of the injunction alone. Okay. Mr. Clement, thank you. Mr. Nelson, thank you. This case is submitted.
judges: Boggs, BRESS, MENDOZA